%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Dr. Andrew Collier and Kathleen Collier, h/w

## DEFENDANTS
The City of Philadelphia d/b/a Philadelphia Police Department, et al.

**(b)** County of Residence of First Listed Plaintiff  **Burlington**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Philadelphia**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Gavin P. Lentz, Esquire, Bochetto & Lentz, P.C., 1524 Locust Street,
Philadelphia, PA 19102 , (215) 735-3900

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                  and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☒ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1983
Brief description of cause:
Civil Rights / Wrong Arrest

## VII. REQUESTED IN
COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ in excess of $150,000  CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S)
IF ANY
(See instructions):
JUDGE  Paul S. Diamond

DOCKET NUMBER  2:12-cv-05690-PD

DATE
9-24-14

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**   **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**   Example:   U.S. Civil Statute: <u>47 USC 553</u>
                                           Brief Description: <u>Unauthorized reception of cable service</u>

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  550 Bartram Road, Moorestown, NJ  08057

Address of Defendant:  One Franklin Square, Philadelphia, PA 19106

Place of Accident, Incident or Transaction:  Eastern District of Pennsylvania
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))
Yes ☐   No ☑

Does this case involve multidistrict litigation possibilities?   Yes ☐   No ☑
RELATED CASE, IF ANY:

Case Number:  2:12-cv-05690-PD   Judge  Paul S. Diamond   Date Terminated:

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐  No ☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. Diversity Jurisdiction Cases:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify)

**ARBITRATION CERTIFICATION**
(Check appropriate Category)

I,  Gavin P. Lentz, Esquire , counsel of record do hereby certify:
☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 9-24-14   Attorney-at-Law   53609  Attorney I.D.#
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above. (See Above)

DATE: ___  Attorney-at-Law   53609  Attorney I.D.#

CIV. 609 (6/08)

UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: ___550 Bartram Road, Moorestown, NJ  08057___

Address of Defendant: ___One Franklin Square, Philadelphia, PA 19106___

Place of Accident, Incident or Transaction: _____Eastern District of Pennsylvania_____
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))
        Yes ☐     No ☑

Does this case involve multidistrict litigation possibilities?        Yes☐   No ☑
RELATED CASE, IF ANY:

Case Number: ___2:12-cv-05690-PD___   Judge ___Paul S. Diamond___   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
        Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
        Yes☑  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
        Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
        Yes ☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. Diversity Jurisdiction Cases:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify)

**ARBITRATION CERTIFICATION**
(Check appropriate Category)

I, ___Gavin P. Lentz, Esquire___, counsel of record do hereby certify:
  ☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
  ☐ Relief other than monetary damages is sought.

DATE: ___9·24·14___       _____     ___53609___
                     Attorney-at-Law           Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above. *(SEE ABOVE)*

DATE: _____       _____     ___53609___
                     Attorney-at-Law           Attorney I.D.#

CIV. 609 (6/08)

**APPENDIX I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Dr. Andrew Collier, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| The City of Philadelphia d/b/a | : | NO. |
| Philadelphia Police Department, et al. | : | |
| | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits                                ( )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                          ( )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                           (X)

(f)  Standard Management – Cases that do not fall into any one of the other tracks.          ( )

| | | |
|---|---|---|
| 9-24-14 | Gavin P. Lentz, Esq. | [signature] |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiffs** |
| (215) 735-3900 | (215) 735-2455 | glentz@bochettoandlentz.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DR. ANDREW COLLIER and**<br>**KATHLEEN COLLIER**<br>550 Bartram Road<br>Moorestown, NJ  08057<br><br>*Plaintiffs*<br><br>v.<br><br>**THE CITY OF PHILADELPHIA d/b/a**<br>**PHILADELPHIA POLICE DEPARTMENT**<br>One Franklin Square<br>Philadelphia, PA  19106<br><br>And<br><br>**POLICE OFFICER**<br>**STEPHEN DMYTRYK (BADGE NO. 1851)**<br>800 Race Street<br>Philadelphia, PA  19106<br><br>And<br><br>**POLICE OFFICER**<br>**CHARLES KAPUSNIAK (BADGE NO. 3465)**<br>800 Race Street<br>Philadelphia, PA  19106<br><br>And<br><br>**JOHN DOE POLICE OFFICERS (1 to 5), Badge**<br>**Numbers Presently Unknown**<br>800 Race Street<br>Philadelphia, PA 19106<br><br>*Defendants* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br><br><br><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

## <u>COMPLAINT</u>

Plaintiffs, by and through their undersigned counsel, aver as follows in support of their

claims against Defendants:

1

## I.   JURISDICTION

1.     This action arises, in part, under the Fourth and Fourteenth Amendments to the Constitution of the United States of America, U.S. Const. Amend. XIV, § 2, for which this Court has original jurisdiction pursuant to 42 U.S.C. § 1343(a)(3).  Federal question jurisdiction is further conferred by virtue of the claim under 42 U.S.C. § 1983. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

## II.  VENUE

2.     Venue is appropriate here pursuant to 28 U.S.C. § 1391(b) as the operative facts occurred in this District and all Defendants are located here.

## III. NATURE OF THE CLAIM

3.     This case involves a longstanding pattern of outrageous police conduct which resulted in the wrongful arrest of Dr. Collier who was simply making a house call to a patient when the Defendant Police Officers arrested him. Despite offering to show the police his patients' medical records to prove why his patient needed a prescription, the police cursed at Dr. Collier and maliciously charged him with selling narcotics. This false and malicious claim was then widely publicized on the internet, causing Dr. Collier to be suspended by two hospitals and resulting in millions of dollars in economic losses.

## IV. PARTIES

4.     Plaintiff Dr. Andrew Collier ("Dr. Collier") is a board certified orthopedic surgeon who resides at 550 Bartram Road, Moorestown, New Jersey 08057.  Prior to this case, Dr. Collier had never been arrested in his life.

5.     Plaintiff Kathleen Collier ("Mrs. Collier") is the wife of Dr. Collier who may be served at 550 Bartram Road, Moorestown, New Jersey 08057.

6.     Defendant the City of Philadelphia d/b/a the Philadelphia Police Department ("the Department" or "the City") is a Home Rule Charter municipality which may be served at One Franklin Square, Philadelphia, Pennsylvania 19106. At all times material, the City directed, managed and controlled the Police Department and the Defendant Officers.

7.     Defendant Police Officer Stephen Dmytryk ("Officer Dmytryk") is a Philadelphia Police Officer with badge number 1851 who may be served at 800 Race Street, Philadelphia, Pennsylvania 19106.

8.     Defendant Police Officer Charles Kapusniak ("Officer Kapusniak") is a Philadelphia Police Officer with badge number 3465 who may be served at 800 Race Street, Philadelphia, Pennsylvania 19106.

9.     Defendants John Doe Police Officers 1 to 5, badge numbers presently unknown, are as yet unnamed Philadelphia Police Officers who participated in violating Dr. Collier's rights without lawful justification on November 26, 2013.  All Defendant Police Officers will be referred to collectively as "Officer Defendants."

## V.   FACTS COMMON TO ALL COUNTS

10.     At all times prior to his wrongful arrest, Dr. Collier was a board certified orthopedic surgeons on staff at Thomas Jefferson University Hospital with an excellent reputation.

11.     Since 1985, Dr. Collier had built a thriving medical practice in South Philadelphia, Pennsylvania known as Pennsylvania Orthopedic Associates. Through this practice, he has performed countless knee, hip, and other joint replacement surgeries, and he had an unblemished record prior to the events complained of herein.

12.     As a courtesy to certain patients, Dr. Collier would make house calls to provide follow-up care and prescriptions for his patients.

3

13.     On November 26, 2013, Dr. Collier paid a house call on behalf of three such patients, each of whom he had had an ongoing and continuous doctor-patient relationship with for more than a decade.

14.     The nature of the patients' various ailments required pain medication for serious chronic pain related to trauma and degenerative diseases.  All of these patients' records generated years before Dr. Collier's arrest established a clear medical need for prescription pain medication.

15.     As a courtesy to his longstanding patient, Alexander Palmisano, Dr. Collier arranged to drop by the patients' house around 4:30 p.m. on November 26, 2013.

16.     The following patients each wanted delivery at Mr. Palmisano's house: Lisa Manuella (Alexander Palmisano's girlfriend) and family member Lynda Palmisano. Each of these patients suffered from chronic pain which is well documented in their charts. As a result, Dr. Collier prepared their standard prescriptions as necessitated by their conditions and as he had previously prescribed due to medical necessity.

17.     Dr. Collier had made a similar visit to examine his patients and deliver their prescriptions approximately one to two months before this date. He had also made similar house calls to these same patients multiple times prior to that visit; each time Dr. Collier provided a prescription consistent with each patient's course of treatment according to their medical needs.

18.     When Dr. Collier arrived on November 26, 2013, his patient Alexander Palmisano invited him to sit downstairs and have a Coke because Dr. Collier was waiting on a call to let him know when another patient was prepared for an examination at another house call near Jefferson Hospital.

19.     Unbeknownst to Dr. Collier, while he had been preparing to make the house call, the home had allegedly been under surveillance by officers known by the Philadelphia Police Department to have previously fabricated search warrants and violated individual citizens' civil

4

rights for many years prior to 2013. Dr. Collier was never identified as a suspect nor seen on any prior surveillance yet he was arrested and maliciously prosecuted anyway.

20.     The police had allegedly received an anonymous tip that an individual residing at the house was selling narcotics. Based on that tip, they allegedly observed an individual named Phillip Chestnut ("Chestnut") enter the home for a short period of time and then leave. (No narcotics nor any other type of transaction was observed.)

21.     Despite the lack of any probable cause, Officer Dmytryk and his cohorts obtained a search warrant for Dr. Collier's patient's house, identifying marijuana or any other controlled substance, paraphernalia used for packaging said items for sale or distribution, and any fruits of the crime as items to be searched for and seized.

22.     After Dr. Collier and his patient had been sitting downstairs for approximately five minutes, Dr. Collier was startled to hear a voice commanding him to put your fucking hands behind your back, this was a police raid, you are all under arrest!

23.     Immediately thereafter, approximately eight to ten police officers, including Officers Dmytryk and Kapusniak, guns drawn, swarmed the downstairs room and began tearing the room apart, apparently searching for illegal drugs or other contraband.

24.     When the police officer asked Dr. Collier who he was and what he was doing at the home, he immediately told them his name and informed them that he was a physician making a house call to one of his longtime patients.

25.     Dr. Collier even offered to have his medical office provide the records of the patients at issue but all of the officers including Dmytryk and Kapusniak, refused to consider such records.

26.     One of the officers with Officer Dmytryk stated: "Doctors don't make fucking house calls, you're locked up." Thereafter, the officers proceeded to pursue felony charges but continued to refuse to review any patient records.

5

27.     The police search allegedly revealed a box containing marijuana on the table; however the box was obscured from Dr. Collier's view from where he sat at the table and he had no knowledge of the presence of illegal drugs in the home.

28.     The search also allegedly revealed hidden pill bottles containing Percocet pills in a slot machine that was clearly not visible to Dr. Collier.

29.     Despite his pleas of innocence and his offer to show the police his patients' records, Dr. Collier was first handcuffed, placed under arrest and then his hands were zip-tied behind his back by Defendant Officers for transport to a jail cell.

30.     Dr. Collier was then searched by Defendant Officers, which revealed that he was not in possession of any money or controlled substances.

31.     The only property the police seized from Dr. Collier were the three prescriptions for his patients which Dr. Collier had prepared earlier that day in preparation of treating his patients and which had been sitting on the table in front of him.

32.     The police officers demanded that Dr. Collier tell them "where the fucking money was", despite that he told them repeatedly he was a doctor and had no idea what they were talking about.

33.     Despite Dr. Collier's protestations that he was a doctor delivering legitimate prescriptions to his long-term patients for well-documented medical issues, the Defendant Police Officers refused to listen to him at all and wrongfully arrested him.

34.     Dr. Collier repeatedly told the police that they could go to his office right then to verify his identity and purpose for being at the house, but they refused to take that simple step.

35.     Dr. Collier was instead then taken to a police van waiting outside and was transported to a jail cell where he was charged with selling both marijuana and Percocet despite a lack of evidence to support such serious charges.

6

36. Dr. Collier was held in a jail cell overnight during the Thanksgiving holiday period, at which time his traumatized wife was able to post bail and obtain his release.

37. The police investigation report stated that Dr. Collier was arrested for selling marijuana—despite that fact that Dr. Collier was not in possession of any marijuana, had no reason to know that marijuana was present in the home, carried no currency for the purchase or from the sale of marijuana, did not possess any marijuana paraphernalia or packaging, and he tried in vain to inform the officers that his presence at the home was easily explainable as a medical house call.

38. Regardless of any alleged cause the police may have cooked up via its rogue officers relating to the sale of marijuana at the house, there was absolutely no tangible evidence to support the conclusion that Dr. Collier had engaged in selling marijuana.

39. Dr. Collier was subsequently charged with (1) criminal conspiracy, (2) manufacture, delivery, or possession of a controlled substance with intent to manufacture or deliver, and (3) knowing or intentional possession a controlled substance for *both marijuana and Percocet* on November 27, 2013, despite the fact that Dr. Collier was not in possession of any marijuana or Percocet, and had not delivered any Percocet to his patients, but merely planned to provide them with prescriptions based upon medical necessity.

40. Additionally, the fact that the officers' search allegedly revealed pill bottles and Percocet concealed in the house - where Dr. Collier did not reside - does nothing to support any inference that the doctor was therefore engaged in possessing or distributing controlled substances.

41. Dr. Collier further advised the officers he lived in New Jersey and offered him identification which was ignored by Defendant Officers.

42. Due to the utter lack of evidence supporting the bogus and fabricated charges against Dr. Collier, all charges against him were ultimately dropped by the District Attorney's Office on March 7, 2014 because the City had known for many years prior to Dr. Collier's arrest that Defendant Officers were engaging in unlawful activity and could not be trusted.

7

43.     Despite the charges being dropped, the news and media publications regarding the arrest virtually destroyed Dr. Collier's reputation. To date, a simple google search of Dr. Collier's name immediately reveals the damaging arrest charges.

44.     Dr. Collier has been forced to spend thousands of dollars with a reputation management firm but simple Google searches unfortunately still show this arrest.

## VI.     DAMAGES

45.     As a direct result of his unlawful arrest, Dr. Collier was immediately forced to take a leave of absence from Hahnemann University Hospital.

46.     Dr. Collier's practice was immediately damaged when Independence Blue Cross summarily suspended his participation as a provider effective from the date of his arrest.

47.     Dr. Collier's practice was further damaged when, as the direct and proximate result of his wrongful arrest, physicians who had regularly refereed patients to Dr. Collier's practice abruptly ceased their longstanding referral practices.

48.     Furthermore, Dr. Collier was prevented from serving as an independent medical examination expert witness, causing great financial losses, for the period between his wrongful arrest and the subsequent dismissal of all charges against him.

49.     Plaintiffs' expert witness fees which lost as a result of Defendants' conduct exceed One Million Dollars ($1,000,000.00). Plaintiffs' services as an expert in all of his pending cases were terminated after the wrongful arrest was publicized. (*See* termination notice from Blue Cross referencing this arrest as the basis in Exhibit "A" hereto.)

50.     The arrest at issue has tainted Dr. Colliers' ability to even act as an expert witness in the future as the mere mention of his arrest for narcotics destroys his credibility and usefulness in civil cases.

51.     But for the Defendant Officers' unlawful conduct as laid out more fully above, Dr. Collier would not have had to endure court proceedings which necessitated extensive attorneys' fees, costs, and lost days from work.

### A.     THE CITY HAD ACTUAL KNOWLEDGE OF DEFENDANT OFFICERS PATTERN OF CIVIL RIGHTS VIOLATIONS FOR YEARS PRIOR TO PLAINTIFF'S ARREST

52.     Defendant City of Philadelphia knew in fact that Officers Dmytryk and Kapusniak had engaged in unlawful and dishonest conduct in their capacities as police officers on many occasions prior to the date Dr. Collier was arrested yet it did nothing to stop them from continuing to act as narcotic officers resulting in Dr. Collier's wrongful arrest.

53.     Defendant City of Philadelphia knew that Officers Dmytryk and Kapusniak had been named as Defendants in multiple prior lawsuits alleging that this and their fellow officers in their narcotics unit had engaged in a systematic pattern of violating citizens' civil rights through improper and unconstitutional means including obtaining secure search warrants using fabricated evidence, searching persons and property without probable case, and subject innocent citizens to unlawful arrest, detention, and prosecution.

### B.     SUMMARY OF THE PRIOR CIVIL RIGHTS LAWSUITS FILED AGAINST OFFICER DMYTRYK AND KAPUSNIAK BEFORE PLAINTIFF'S WRONGFUL ARREST

54.     In a case captioned as *Graves v. Dmytryk and Kapusniak* under docket number 13–cv–05753–PD at paragraph 11 it was publicly alleged that on November 1, 2011 Mr. Graves was in his home when officers – including Dmytryk and Kapusniak - concocted the story which ultimately led to his wrongful arrest. The officers in question also falsely claimed they had recovered narcotics from his person. The officers and entered his apartment without a warrant and he was wrongfully arrested just like the Plaintiff in this case and charged with possessing narcotics with intent to deliver them even though there was no evidence to support those charges.

9

55.     In paragraph 16 of the *Graves* Complaint, the Defendant Officers in question including Defendants herein, stole money from his apartment and falsely claimed they had recovered drugs which in fact they had planted at the scene.

56.     The *Graves* case at paragraph 19, it was acknowledged that the officers had exculpatory information about the Plaintiff but failed to provide that information to prosecuting authorities. On December 3, 2012, the City was notified that the prosecutor's office was refusing to prosecute the Graves case because the officers in question including Defendant Officers herein lacked credibility.

57.     Despite all of this publically available evidence, the City permitted Officer Dmytryk, badge number 1851 and Officer Kapusniak, badge number 3465 to continue acting as a Philadelphia police officers up and through the date they wrongfully arrested Dr. Collier.

58.     In a case captioned as *Johnson v. Philadelphia and Police Officer Dmytryk badge 1851*, **case number 2:14-cv-00766-PD**, the city of Philadelphia and the Police Department were on actual notice that Officers Dmytryk, badge number 1851 and Kapusniak, badge number 3465 had violated Mr. Johnson's civil rights on February 8, 2012 by wrongfully charging him with intent to sell narcotics among other serious offenses.

59.     The City was further aware that the affidavit of probable cause used to arrest Mr. Johnson was fabricated by the Defendant Officers including Officers Dmytryk, badge number 1851 and Kapusniak, badge number 3465.

60.     Pursuant to paragraph 22 of the *Johnson* Complaint, the city was aware that the Defendant Officers had used a fabricated warrant to arrest *Mr. Johnson*. The city was further aware that the officers held *Mr. Johnson* at gunpoint and told him they would "blow his head off" causing his 6-year-old son to urinate in his pants.

61.     In a case captioned as *DelBuono v. city of Philadelphia and Officer Dmytryk number 1851 and Officer Kapusniak number 3465* captioned at **2:14-cv-05064-PD**, the city of

10

Philadelphia was placed on actual notice that Defendant Officers engaged in a violation of the citizen's rights on September 6, 2012. On that date, the complaint which was publicly filed alleged that *Ms. DelBuono* was having coffee in her private residence and paying bills at her table when the Defendant Officers unlawfully entered her residence. Defendants falsely allege they had a warrant when in fact they did not have one.

62.     Defendants stole cash from the Plaintiff's house. Plaintiff was falsely charged with selling narcotics just like the Plaintiff in this case was charged. The allegations asserted by the officers and subsequent search warrants contained falsified information prepared by the officers including Officer Dmytryk.

63.     In a case publicly filed as *Mercedes Basilo vs. Dmytryk* **filed under docket number 2:10–cv–01281–TON** and the City was on actual notice of the following egregious misconduct of Defendant Officer Dmytryk which constituted a civil rights violation.

64.     As early as March 26, 2008, Officer Dmytryk and his rogue  team of narcotics officers were  known to have fabricated probable cause, smashed into Mrs. Basilo's residence and not only arrested and terrorized the family but - as in this case – arrested an innocent third party who happened to be present at the home. The innocent third party was a repairman conducting home renovations who was thrown to the floor at gunpoint and threatened by the police officers. (See paragraphs 26 through 39 of the aforementioned *Basilo* Complaint.)

65.     In the *Basilo* complaint, Officer Dmytryk also assisted in fabricating probable cause, fabricating a search warrant and stealing personal items that were not properly reported on evidence property receipts.

66.     In a case captioned under docket number 2:10–cv–01789-MAM, *Feliciano v. City of Philadelphia and Officer Dmytryk, badge number 1851* filed on April 22, 2010 - more than 3 years prior to Dr. Collier's arrest in this case - the City was again placed on actual notice of the outrageous and unlawful conduct and pattern and practice of its officers working together with Officer Dmytryk.

11

67.     In the *Feliciano* suit, paragraph 19 stated that the Defendant Officers including Defendant Dmytryk, badge number 1851 fabricated a probable cause affidavit in violating citizen's civil rights on April 23, 2010.

68.     In paragraph 21 of the *Feliciano* Complaint, the City was on actual notice that as of September 30, 2009 all charges against Defendant Feliciano were dropped because the Defendant Officers fabricated the information giving rise to probable cause and the City decided the officer lacked credibility so all charges were dropped.

69.     Despite actual notice of Defendant Officers' misconduct in the *Feliciano* case, the City deliberately ignored all of these warning signs was deliberately indifferent to the rights of its citizens and permitted the officer to continue to violate individual rights for years prior to Dr. Collier's rights being violated in this instance.

70.     In the case captioned as ***Kenneth Mills v. Dmytryk*, badge number 1851 filed under case number 2:13-cv-06184-RBS**, the City was again placed on actual notice on November 3, 2011, two years before Dr. Collier's arrest - the Defendant Officer Dmytryk and his unit fabricated testimony and violated the civil rights of *Mr. Mills* by falsifying a probable cause affidavits signed by Officer Dmytryk, badge number 1851.

71.     Pursuant to paragraph 21 of the *Mills* Complaint, the City was on notice of the following allegations against Defendant Police Officers in this case:  they confiscated a weapon which was lawfully registered to a disabled enlisted United States Army member who happened to be out on disability and present at the premises.

72.     In paragraph 22 of the *Mills* Complaint, the Defendant Police Officers also stole a diamond ring belonging to the soldier in that room which was never reported on police paperwork. In addition the officer stole $6000 in United States currency which had been recovered by the US soldier as a result of a federal relief program.

73.     In paragraph 29 of the *Mills* complaint the city was placed on actual notice that its district attorney's office on February 19, 2013 dropped the charges because the officers including Officer Dmytryk lacked credibility.

74.     In a prior case captioned as ***Adams v. City of Philadelphia and Officer Dmytryk, docket number 2:13–cv- 06311–LDD.*** In the *Adams* case, a citizen was wrongfully arrested despite having no prior record, having a degree in business ministration from Temple University and otherwise behaving as a lawful citizen.

75.     In paragraph 9 of the *Adams* litigation, the city was publicly placed on notice of a filing which alleged that on September 25, 2012 Plaintiff was wrongfully arrested by the Defendant Police Officers including Defendant Dmytryk, badge number 1851.

76.     In paragraph 18 of the *Adams* Complaint, the city was aware that Office Dmytryk, badge number 1851 obtained a search warrant using fabricated information.

77.     In paragraph 21 of the *Adams* case, the Defendant Police Officer in this case wrongfully charged *Ms. Adams* with possessing narcotics with the intent to deliver, despite that there was no evidence to support such claims.

78.     In paragraph 28 of the *Adams* Complaint, it is publicly stated that the Philadelphia Police Department was aware the District Attorney of Philadelphia beginning in December 2012 (again before Dr. Collier's arrest) concluded with the police commissioner they would not prosecute cases generated by officers including Officer Dmytryk number 1851 because the officers lacked credibility.

79.     As a result of this official policy adopted by the city, the charges against *Ms. Adams* were dropped however the stigma of her arrest remained as it does for the Plaintiff in this case. Despite the charges being dropped, the city failed to take any action to stop Officer Dmytryk.

80.    Despite the years of actual notice before the date Dr. Collier's civil rights were violated, the City of Philadelphia permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice, and custom of:

a)  Unjustified, unreasonable and illegal abuse of authority by its police officers;

b)  Abuse of police powers, including false arrest, fabricated warrants, malicious prosecution, harassment and improper searches;

c)  Misrepresenting facts in order to establish probable cause and arrests where none would otherwise exist;

d)  Arresting and incarcerating citizens without probable cause solely for the purpose of making arrests and stealing money with no intention of seeking successful criminal prosecutions;

e)  Psychologically or emotionally unfit persons serving as police officers;

f)  Failure of police officers to prevent, deter, report or take action against the unlawful conduct of police officers under such circumstances as presented herein;

g)  Failing to take action to stop its officers from repeated violating the civil rights of its citizens.

81.    Defendant City of Philadelphia has encouraged tolerated, ratified and has been deliberately indifferent to the following patterns, practices, and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

a)  Unlawful detentions and unlawful arrests by police officers;

b)  The proper exercise of police powers, including but not limited to the use of false information to obtain search warrants, fabrication of evidence, unlawful arrest, malicious prosecution and unlawful detention;

14

c) The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to perform as officers;

d) The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaint of misconduct and who had been sued for civil rights violations multiple times prior to the events in this case;

e) Police officers' use of their status as police officers to employ the use of unlawful search and/or arrest, or to achieve ends not reasonably related to their police duties;

f) Police officers' use of their status as police officers under state law to employ the use of unlawful arrest, invoke the Code of Silence, or to achieve ends not reasonably related to police duties;

g) The failure of police officers to follow established policies, procedures, directives and instructions regarding the securing of search warrants and the use of arrest powers under such circumstances as are presented in this case;

h) The refusal of police officers to intervene when other officers violate the rights of citizens in their presence;

i) The failure to identify and take remedial or disciplinary action against units of officers assigned to narcotics investigations in light of repeated instances of misconduct over a period of years as alleged in this Complaint; and

j) The refusal of police officers to report or provide information concerning the misconduct of other police officers, a custom or practice known as the "Code of Silence."

82.     Defendant City of Philadelphia failed to properly train, supervise or discipline officers assigned to narcotics units of the Philadelphia Police Department who have engaged over a period of many years in systematic abuses of authority, including but not limited to: (a) the duty to

provide only truthful information in securing search and arrest warrants, (b) the duty to ensure that relationships and dealings with confidential informants are in accord with Police Department policy and constitutional commands, (c) the duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) the duty to provide accurate and truthful information to the prosecutor's office, (f) the duty to report and disclose misconduct and illegal actions of other police officers, (g) the improper execution of search warrants, and in particular prohibitions on searches that go beyond those authorized by the warrant, and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

83.     Defendant City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other Philadelphia Police Officers, thereby causing and encouraging Philadelphia Police, including the Defendant Officers in this case, to violate the rights of citizens such as the Plaintiff.

84.     Defendant City of Philadelphia ignored publically available evidence from similar lawsuits against Officers Dmytryk and Kapusniak and his narcotics unit resulting in the wrongful arrest of Dr. Collier.

85.     Defendant City of Philadelphia has been deliberately indifferent to the need to train, supervise and discipline police officers (especially those in its narcotics units) including Defendants. The Internal Affairs Divisions (IAD) of the Philadelphia Police Department (PPD) failed to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

  a)  There is a history and pattern of chronic delays in resolving disciplinary complaints against its officers which encouraged misconduct;

  b)  There is a lack of consistent, rational and meaningful disciplinary and remedial actions;

16

c)   There is a failure to effectively discipline substantial numbers of officers who were
     found to have engaged in misconduct and that involved the officers in this case and
     other officers in Defendants Dmytryk and Kapusniak's units;

d)   The PPD's internal investigatory process has fallen below accepted practices and is
     arbitrary and inconsistent;

e)   The PPD discipline, as practiced, is incident based rather than progressive. Thus,
     repeat violators are not being penalized in proportion to the number of violations;

f)   The conduct of IAD investigations demonstrates that PPD internal affairs personnel
     are not adequately trained and supervised in the proper conduct of such
     investigations;

g)   An analysis of IAD's investigatory procedures from prior cases indicates a pattern of
     administrative conduct where the benefit of the doubt is given to the officer rather
     than the complainant;

h)   There are serious deficiencies in the quality of IAD investigations and the validity of
     the IAD findings and conclusions;

i)   The PPD lacks an effective early warning system to identify, track and monitor
     "problem" officers;

j)   Despite that the Defendant Officers in this case had amassed an exceptionally large
     number of serious misconduct complaints, the officers stayed well below the radar of
     an early warning system;

k)   Despite numerous prior complaints against the Defendant Officers, the PPD took no
     meaningful disciplinary or remedial actions;

l)   Despite numerous prior complaints against several of the Defendant Officers, the
     PPD took no meaningful steps to more closely monitor, retrain and supervise the
     officers;

17

m) IAD frequently fails to interview available eyewitnesses to incidents involving citizen complaints of misconduct. The interviews that are conducted by IAD are below acceptable standards of police practice and fail to address key issues in the cases; and

n) IAD fails to acknowledge the disproportionate and extreme use of force used by police officers in the investigation of citizen complaints and fails to properly categorize the police officers' misconduct in those cases as an impermissible use of force.

86. The city of Philadelphia was deliberately indifferent to the need for more or different training, supervision, investigation or discipline in the areas of:

a) Proper methods of corroborating and then using information in obtaining probable cause;

b) Proper exercise of police powers;

c) Properly dealing with Police officers with credibility issues or emotional or psychological issues;

d) Properly dealing with police officers use of their status as police officers to have persons falsely arrested and maliciously prosecuted;

87. The City of Philadelphia failed to properly sanction or discipline its officers in the narcotics units despite that the City was aware multiple constitutional violations by many other police officers, thereby causing and encouraging police officers, including Defendant Officers Dmytryk and Kapusniak and John Doe Officers, to violate the rights of citizens such as Plaintiff.

88. The City of Philadelphia failed to properly sanction or discipline officers and acquiesced to the Defendant Officers' unlawful conduct after becoming aware that these particular officers engaged in the aforementioned conduct in cases dating back to 2002 while concealing and/or aiding and abetting in the violations of constitutional rights of citizens by these

18

police officers, thereby causing and encouraging police officers, including Defendant Officers in this case, to violate the rights of citizens such as Plaintiff.

89.   The City of Philadelphia was aware and was deliberately indifferent to the unconstitutional acts and omissions of the Defendant Officers in its narcotics units for many years including:

a)   Beginning in 2002, several legal complaints alleging civil and constitutional rights of false arrests, malicious prosecutions, falsifying documents and testimony alleging the violations of the constitutional rights of citizens by the Defendant Officers were filed;

b)   In 2005, former Philadelphia Police Commissioner Sylvester Johnson testified at trial in the case of *Arnold Randall v. City of Philadelphia, et al.* C.A. No. 04-1081 regarding the customs, policies and procedures within respect to the narcotics units generally and specifically with regards to allegations that the Defendant Officers engaged in false arrests, malicious prosecutions and fabrication of evidence;

c)   In 2005, IAD was authorized by the City of Philadelphia to investigate the numerous allegations of false arrests, malicious prosecution and fabrication claims against the Defendant Officers, as well as other members of the narcotics units;

d)   In 2005, and later, the Philadelphia City Solicitor's Office was authorized by the City of Philadelphia to investigate the numerous allegations of false arrests, malicious prosecution and fabrications claims against the Defendant Officers, as well as other members of the narcotics units;

e)   The City of Philadelphia was also aware that the federal authorities were investigating some of these same officers for several years during this period of time;

f)   In 2007, the City of Philadelphia was aware of the constitutional violations by these same officers and other officers in the narcotics units when the Third Circuit Court of Appeals denied the Defendant Officers claim of Qualified Immunity due to their

unlawful and unconstitutional actions in a case averring the same claims as this

case—false arrest, malicious prosecution and falsification of documents. *See Andre*

*Blaylock v. City of Philadelphia, et al.* 504 F.3d 405 (3d Cir. 2007); and

g) In December 2012, the Philadelphia District Attorney's Office informed Philadelphia

Police Commissioner Ramsey that officers who worked with Defendant Dmytryk on

other cases where citizens were wrongfully arrested would no longer be permitted to

be witnesses in narcotic cases as they had no credibility.

90.     Despite years of being on actual notice that Defendant Officers were fabricating

records and wrongfully arresting citizens, Defendant City of Philadelphia continued to permit,

acquiesce, encourage, tolerate, ratify and has been deliberately indifferent to the unconstitutional acts

and omissions by the Defendant Officers despite the aforementioned allegations, investigations, and

Court holdings for years.

91.     Despite multiple civil rights lawsuits being filed against Defendant Officers including

Officers Dmytryk and Kapusniak for years prior to Dr. Collier's arrest, the city ignored the danger it

was creating in allowing these officers to continue acting under color and authority of state law and

to make arrests.

**COUNT I - 42 U.S.C. §§ 1983 and 1988**
**(Policy or Custom)**
**(DR. COLLIER v. THE PHILADELPHIA POLICE DEPARTMENT)**

92.     Plaintiff incorporates the foregoing paragraphs of this Complaint as though the same

were set forth at length herein.

93.     As aforementioned, Officer Defendants, including Officers Dmytryk and Kapusniak,

and all other employees of the Department, acting within the course and scope of employment, under

the color of state law, and pursuant to the customs, policies, and practices of the Department,

intentionally and maliciously arrested Dr. Collier without probable cause and/or due process of law,

20

and deprived him of the equal protection of the law and the privileges and immunities afforded to citizens of the United States.

94.    Specifically, Defendants' actions violated Dr. Collier's rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, the laws of the United States, and violated 42 U.S.C. Section 1983.

95.    For many years prior to the events of November 26, 2013, persons within the Philadelphia Police Department, including but not limited to Officers Dmytryk and Kapusniak and their supervisors and those persons within the various narcotics units, engaged in a custom, practice or policy of arresting individuals despite fabricated probable cause to believe a crime had been committed. (*See* list of prior civil rights cases against Defendants Dmytryk and Kapusniak referenced in prior paragraphs herein)

96.    The course of conduct of the Department, as laid out more fully above, was (1) pursuant to an official or unofficial proclamation, policy or edict, and/or (2) pursuant to a custom or practice so permanent and well-settled so as to virtually constitute and/or have the force of law.

97.    Policymakers, with final decision-making authority at the Department, were aware of the policy, practice or custom and/or acquiesced to it.

98.    The policymakers made a deliberate choice from among various alternatives to follow a particular course of action.  This policy reflected a deliberate indifference to Dr. Collier's Constitutional rights and it encouraged and enabled Defendants Dmytryk and Kapusniak to act as he did in this case

99.    Specifically, Dr. Collier suffered a violation of his rights to liberty, personal security, and bodily integrity guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America.

100.    The aforementioned deprivation of rights guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments—and the protection from unreasonable seizures provided by

21

the Fourth Amendment to the Constitution of the United States of America—were committed by Defendants while acting under the color of state law.

101.    The aforementioned deprivation of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments were a direct result of the custom, practices or policies of the Department as described above.

102.    The Department's failure to take action and/or remain deliberately indifferent to the years of known abuses and violations of Dr. Collier's rights directly and proximately caused his damages.

103.    The Department's actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable and just.

**COUNT II - 42 U.S.C. §§ 1983 and 1988**
**(Fourth Amendment – False Arrest)**
**(DR. COLLIER v. OFFICER DEFENDANTS)**

104.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

105.    Officer Defendants' arrest of Dr. Collier was performed under color of state law, was state action under 42 U.S.C. 1983, and unjustly deprived Dr. Collier of his rights, privileges, and/or immunities secured by the Constitution of the United States.

106.    In particular, Officer Defendants deprived Dr. Collier of his rights under the Fourth Amendment to the Constitution, including his right to be free from unreasonable seizure.

107.    As aforementioned, Dr. Collier had no idea that any illegal controlled substances were present when we made his house call on November 26, 2013, and even a cursory review of the circumstances would have revealed to the officers that Dr. Collier was merely a doctor making a house call; thus, Dr. Collier believes and therefore avers that his arrest was conducted without probable cause and in violation of the Fourth Amendment of the United States Constitution.

108.    Defendant Officers lacked probable cause and presented false information in support of the search warrant at issue that led to Dr. Collier's arrest.

109.    While executing the arrest of Dr. Collier, the Officer Defendants acted with reckless disregard of facts that would have led a reasonable officer to conclude that Dr. Collier was not engaged in any illegal activity.

110.    Reasonable officers in the Officer Defendants' position would have understood that their actions violated Dr. Collier's Fourth Amendment right to be free from unreasonable seizure.

111.    Defendants ignored exculpatory evidence in maliciously arresting Dr. Collier.

112.    On information and belief, the aforementioned actions of Officer Defendants were taken intentionally, willfully and/or with deliberate indifference to, or reckless disregard of, the rights secured to Dr. Collier.

113.    As a result of the Officer Defendants' violation of Dr. Collier's Fourth Amendment rights, he was unjustifiably and unreasonably arrested, which resulted in the aforementioned damages to him.

114.    Officer Defendants' actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE,** Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable

and just.

## COUNT III - 42 U.S.C. §§ 1983 and 1988
### (Fourth Amendment – False Imprisonment)
### (PLAINTIFF v. ALL DEFENDANTS)

115.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

116.    Defendants' initial and continued actions to arrest, handcuff, and imprison Dr. Collier were taken under color of state law, are state actions under 42 U.S.C. 1983, and unjustly deprived Dr. Collier of his rights, privileges, and/or immunities secured by the Constitution of the United States.

117.    Defendants' incarceration of Dr. Collier over the Thanksgiving Holidays was outrageous and malicious.

118.    In particular, Defendants deprived Dr. Collier of his rights under the Fourth Amendment to the Constitution, including his right to be free from false imprisonment.

119.    Officer Defendants and the Department should not have imprisoned and/or continued to imprison Dr. Collier based on facts known to Defendants.

120.    Upon information and belief, Defendants' lack of probable cause, and/or fabrication of the Warrant, became known to Defendants prior to Dr. Collier's arrest.

121.    By continuing Dr. Collier's false imprisonment, Defendants acted with reckless disregard of facts that would have led a reasonable officer to conclude that Dr. Collier was not a proper suspect.

122.    Reasonable officers in the Officer Defendants' position would have understood that their actions violated Dr. Collier's Fourth Amendment right to be free from unreasonable seizure.

123.    On information and belief, the aforesaid actions of Defendants were taken intentionally, willfully and/or with deliberate indifference to, or reckless disregard for, the rights secured to Dr. Collier.

24

124.     As a result of Defendants' violation of Dr. Collier's Fourth Amendment rights, she was unjustifiably and unreasonably imprisoned, which resulted in damages to Dr. Collier as aforementioned.

125.     Defendants' actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable and just.

### COUNT IV - 42 U.S.C. §§ 1983 and 1988
### (Fourteenth Amendment – Deprivation of Liberty without Due Process)
### (DR. COLLIER v. ALL DEFENDANTS)

126.     Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

127.     Defendants' actions in arresting and detaining Dr. Collier were performed under color of state law, were state actions under 42 U.S.C. 1983, and unjustly deprived him of his rights, privileges, and/or immunities secured by the Constitution of the United States.

128.     In particular, Defendants deprived Dr. Collier of his rights under the Fourteenth Amendments to the Constitution, including his right to the due process of law.

129.     As set forth more fully herein, Defendants' refusal to properly investigate Dr. Collier's identify, failure to review medical records, and purpose for being at the Palmisano residence with prescriptions, and/or Defendants' arrest and imprisonment of him, in the face of evidence known and available to Defendants which affirmatively stated that he was merely a doctor

making a house call, resulted in Defendants' denial of Dr. Collier's liberty without the due process of

law.

130.  As a result of Defendants' deprivation of Dr. Collier's liberty without due process of

law, he was unjustifiably and unreasonably arrested and imprisoned, resulting in damages to him as

aforementioned.

131.  Defendants' actions were malicious, intentional and/or reckless, and displayed such

indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is

warranted.

**WHEREFORE,** Dr. Collier requests compensatory and punitive damages against

Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars,

plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable

and just.

**COUNT V - 42 U.S.C. §§ 1983 and 1988**
**(Malicious Prosecution)**
**(DR. COLLIER v. ALL DEFENDANTS)**

132.  Plaintiff hereby repeats and incorporates all other allegations contained in this

pleading as set forth at length herein.

133.  Officer Defendants, and all other employees of the Department, acting within the

course and scope of employment, under the color of state law, and pursuant to the customs, policies,

and practices of the Department, intentionally and maliciously arrested Dr. Collier without probable

cause and used knowingly unreliable evidence, and maliciously prosecuted him in violation of his

rights and liberties under the Fourth and Fourteenth Amendments to the United States Constitution.

134.  In particular, Defendants' conduct caused Dr. Collier to be arrested, imprisoned, and

criminally charged without probable cause or legal justification.

26

135.    Plaintiff believes and therefore avers that Defendants' prosecution of Dr. Collier was conducted maliciously or for a purpose other than bringing him to justice.

136.    The prosecution against Dr. Collier was terminated in his favor four (4) months after the false arrest, but the damage from said arrest persists.

137.    As a direct and proximate result of Defendants' warrantless seizure and malicious prosecution—or prosecution or for a purpose other than to bring Dr. Collier to justice—he sustained damages as aforementioned.

138.    Defendants' actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights, liberty, and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable and just.

### COUNT VI - 42 U.S.C. §§ 1983 and 1988
### (Monell Claim – Failure to Train and Supervise)
### (PLAINTIFF v. PHILADELPHIA POLICE DEPARTMENT)

139.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

140.    Plaintiff believes and therefore avers that the Department, acting in the course and scope of employment, and under the color of state law, has adopted and maintained a practice of training, condoning, and/or acquiescing to its employees' violations of the Constitutional rights, and/or failing to supervise employees to ensure that Constitutional rights are protected.

141.    The Department's failure to train and/or supervise its employees resulted in the arrest of Dr. Collier without probable cause, without due process of law, and deprived him of the equal

27

protection of the law and the privileges and immunities afforded to citizens under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. Section 1983.

142.    Additionally, the Plaintiff believes and therefore avers that at the time Dr. Collier was arrested and imprisoned, the Philadelphia Police Department knew or should have known that its employees' practices for ascertaining probable cause existed prior to making an arrest were egregiously deficient of the kind necessary to ensure the protection of Constitutional rights, and that the Department deliberately, knowingly, and intentionally failed to take measures to stop or limit the practices which lead to false arrests and false imprisonments.

143.    The Department and its supervisors have a custom and/or practice of failing to supervise the veracity of its narcotics officers in the field, whose oversight and indifference to supervision in this matter is consistent with the practice of the Department.

144.    The Department's inadequacies in verifying officers' investigations finding probable cause were so deficient and likely to lead to a violation of Constitutional rights that the need to provide additional and/or different training for the investigation process was obvious—and the Department's failure to do so amounts to deliberate indifference.

145.    As a result of the Department's failure to train and/or supervise its employees Dr. Collier was unjustifiably and unreasonably arrested and imprisoned, resulting in damages to him as aforementioned.

146.    The Department's actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable

28

and just.

## COUNT VII – STATE CONSTITUTIONAL CLAIM
### (Article 1 § 8 – False Arrest)
### (DR. COLLIER v. OFFICER DEFENDANTS)

147.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

148.    Officer Defendants' arrest of Dr. Collier was performed under color of state law, was state action, and unjustly deprived Dr. Collier of his rights, privileges, and/or immunities secured under the Laws and Constitution of the Commonwealth of Pennsylvania.

149.    In particular, Officer Defendants deprived Dr. Collier of his right to be free from false arrest under Article 1, § 8 of the Pennsylvania Constitution.

150.    As aforementioned, the officers lacked probable cause to arrest Dr. Collier, and Dr. Collier believes and therefore avers that his arrest was conducted without probable cause and in violation of the Constitutional protection provided by Article 1, § 8 of the Pennsylvania Constitution.

151.    Additionally, as set forth more fully in the preceding facts, any mistake as to the existence of probable cause was inherently unreasonable, as the facts and circumstances that were known—or should have been known—to the Officer Defendants at the time of the arrest were in clear contrast to their incorrect assertion that they had probable cause to believe that Dr. Collier was engaging in drug trafficking.

152.    While executing the warrantless arrest of Dr. Collier, the Officer Defendants acted intentionally, maliciously, and/or with reckless disregard of facts that would have led a reasonable officer to conclude that Dr. Collier had not engaged in any illegal conduct.

153.    Reasonable officers in the Officer Defendants' position would have understood that their actions violated Dr. Collier's right to be free from false arrest.

154.    As a result of the Officer Defendants' violation of the rights secured to Dr. Collier by the Pennsylvania Constitution, he was unjustifiably and unreasonably arrested, which resulted in the aforementioned damages to him.

155.    Officer Defendants' actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable and just.

## COUNT VIII - STATE CONSTITUTIONAL CLAIM
### (Article 1 § 8 – False Imprisonment)
### (DR. COLLIER v. ALL DEFENDANTS)

156.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

157.    Defendants' initial and continued actions to imprison Dr. Collier were taken under color of state law, are state actions, and unjustly deprived Dr. Collier of his rights, privileges, and/or immunities secured under the Laws and Constitution of the Commonwealth of Pennsylvania.

158.    In particular, Defendants deprived Dr. Collier of his right to be free from false imprisonment under Article 1, § 8 of the Pennsylvania Constitution.

159.    The Officer Defendants and the Department should not have imprisoned Dr. Collier based on facts known to the Defendants, which clearly demonstrated that Dr. Collier was a doctor providing care to his longstanding patients for serious and chronic medical conditions.

160.    The absolute lack of evidence against Dr. Collier would have led a reasonable officer to release him.

161.    Reasonable officers in the Officer Defendants' position would have understood that their actions violated Dr. Collier's right to be free from false arrest.

162.    On information and belief, the aforesaid actions of Defendants were taken intentionally, willfully and/or with deliberate indifference to, or reckless disregard for, the rights secured to Dr. Collier.

163.    As a result of Defendants' violation of rights secured by the Pennsylvania Constitution, Dr. Collier was unjustifiably and unreasonably imprisoned, which resulted in the aforementioned damages to him.

164.    Defendants' actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable and just.

## COUNT IX - COMMON LAW FALSE ARREST
### (DR. COLLIER v. OFFICER DEFENDANTS)

165.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

166.    Plaintiff believes and therefore avers that Officer Defendants did knowingly, intentionally, negligently, maliciously and/or recklessly, cause the false arrest of Dr. Collier in the absence of probable cause or the existence of another valid and reasonable lawful basis.

167.    Officer Defendants acted with willful misconduct when they chose to ignore facts known to them which clearly demonstrated that Dr. Collier was no more than a doctor making a house call.

31

168.     Reasonable officers in the Officer Defendants' position would have understood that their actions violated Dr. Collier's Constitutional right to be free from unreasonable seizure.

169.     As a direct and proximate result of the Officer Defendants' intentional and/or reckless decision to ignore and/or refuse to review facts which proved that no probable cause existed to substantiate Dr. Collier's arrest, he suffered the aforementioned damages.

170.     Officer Defendants' actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable and just.

## COUNT X - COMMON LAW FALSE IMPRISONMENT
### (DR. COLLIER v. ALL DEFENDANTS)

171.     Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

172.     Plaintiff believes and therefore avers that Officer Defendants and/or the Department did knowingly, intentionally, negligently, maliciously and/or recklessly, cause the false imprisonment of Dr. Collier in the absence of probable cause, in violation 18 PA. CON. STAT. ANN. § 2903 (West 2013), and without the existence of a valid and reasonable lawful basis.

173.     Officer Defendants acted with willful misconduct when they chose to ignore facts known to them which clearly demonstrated that Dr. Collier was providing health care to his patients, and *not* engaging in the sale of drugs.

32

174.    As a direct and proximate result of Defendants' intentional and/or reckless decision to ignore and/or refuse to review facts which proved that no probable cause existed to substantiate Dr. Collier's arrest, he suffered the aforementioned damages.

175.    Defendants' actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable and just.

## COUNT XI – MALICIOUS PROSECUTION
### (DR. COLLIER v. ALL DEFENDANTS)

176.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

177.    As aforementioned, Officer Defendants and all other employees of the Department, acting within the course and scope of employment, under the color of state law, and pursuant to the customs, policies, and practices of the Department, intentionally and maliciously arrested and prosecuted Dr. Collier without probable cause.

178.    Plaintiff believes and therefore avers that Defendants' prosecution of him was conducted maliciously or for a purpose other than bringing him to justice.

179.    The prosecution of Dr. Collier was terminated in his favor four (4) months after his false arrest.

180.    As a direct and proximate result of Defendants' malicious prosecution—or prosecution for a purpose other than to bring Dr. Collier to justice—Dr. Collier sustained damages as aforementioned.

181.     Defendants' actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights, liberty, and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable and just.

## COUNT XII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (PLAINTIFF v. ALL DEFENDANTS)

182.     Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

183.     Plaintiff believes and therefore avers that Defendants' decision to arrest Dr. Collier, despite the known facts and in the face of his benign explanation for his presence in the Palmisano home, was extreme and outrageous conduct that was done intentionally and/or recklessly and in such an egregious manner that it subjected Dr. Collier to severe emotional distress and mental anguish.

184.     Furthermore, Defendants' prosecution of Dr. Collier—which spanned the course of four (4) months—in the face of evidence establishing his identity as a well-respected physician following his normal practice of making house calls to debilitated patients, demonstrates Defendants' extreme and outrageous conduct which was intentionally and/or recklessly performed in such an egregious manner that it subjected Dr. Collier to severe emotional distress and mental anguish.

185.     As a direct and proximate result of Defendants' conduct, Dr. Collier was subjected to humiliation, embarrassment, severe emotional distress, and anxiety which has continued, and in all probability will continue for an indefinite period of time into the future for which he will require medical attention.

34

186.    Defendants' actions were malicious, intentional and/or reckless, and displayed such indifference to Dr. Collier's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Dr. Collier requests compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of Two Million ($2,000,000.00) Dollars, plus interest, costs, attorneys' fees, and such other relief as this Honorable Court deems reasonable and just.

**COUNT XIII—LOSS OF CONSORTIUM**
**(DR. AND MRS. COLLIER v. ALL DEFENDANTS)**

187.    Plaintiffs hereby repeat and incorporate all other allegations contained in this pleading as set forth at length herein.

188.    As a direct and proximate result of the Defendants' conduct as laid out more fully above, Dr. Collier and Mrs. Collier have lost the consortium of each other.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against the Defendants for economic, compensatory, and punitive damages in an amount in excess of the applicable arbitration limits plus interest, costs, and any such other relief this Court deems equitable and just.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims to which they are entitled.

BOCHETTO & LENTZ, P.C.

Date:  September 24, 2014

BY:

Gavin P. Lentz, Esquire
Attorney I.D. No. 53609
1524 Locust Street
Philadelphia, PA  19102
(215) 735-3900
(215) 735-2455 (fax)
glentz@bochettoandlentz.com
*Attorney for Plaintiffs*

35

# Exhibit "A"

1901 Market Street
Philadelphia, PA 19103-1480

# Independence ✚

**CONFIDENTIAL**

February 5, 2014

**Via Certified Mail/Return Receipt**

Andrew J. Collier, Jr., M.D.
2410-14 South Broad Street
Suite 200
Philadelphia, PA 19145

Re: Notice of Summary Suspension of Participation

Dear Dr. Collier:

It has come to the attention of Independence Blue Cross (Independence) and its affiliates that on November 26, 2013, you were arrested and charged with possession of a controlled substance, conspiracy and manufacture, delivery or possession with intent to manufacture or deliver.

The nature and severity of these allegations necessitates our immediate action, including your immediate suspension as an Independence participating provider pending an adjudication of the charges.

Accordingly, Independence is summarily suspending your participation as a provider effective November 26, 2013. Independence will not be responsible for the payment of any claims for dates of service from November 26, 2013, forward. As of the date of this letter, you are prohibited from seeing any Independence members, including but not limited to Keystone Health Plan East, Keystone 65, Personal Choice, and Personal Choice 65 members.

You may appeal this action by requesting a hearing within thirty days of the date of this notice. Your request for a hearing must be in writing and must be delivered by certified mail, return receipt requested, to my attention at the following address.

Independence Blue Cross
Victor Caraballo, M.D.
Senior Medical Director
1901 Market Street MK-8
Philadelphia, PA 19103

Independence Blue Cross offers products directly, through its subsidiaries Keystone Health Plan East and QCC Insurance Company, and with Highmark Blue Shield, independent Licensees of the Blue Cross and Blue Shield Association.

# Independence ⚕

Page 2

Andrew J. Collier, Jr., M.D.

Your failure to submit a written request within thirty days will be considered a waiver of your right to a hearing and any final action taken will be binding and unreviewable. Please note that in the event you waive your right to a hearing, or if your suspension exceeds thirty days, we are still obligated to report such actions to the National Practitioner Data Bank.

In the event you appeal this decision and request a hearing in accordance with the terms of this letter, a hearing will be conducted in accordance with the Independence Due Process Procedure. Please be advised that at the hearing you have a right to: (i) be represented by an attorney or another individual of your choosing; (ii) have a record made of the hearing; (iii) call, examine and cross-examine witnesses; (iv) present evidence; and (v) submit a written statement at the close of the hearing.

Should you have any questions concerning this matter, please feel free to call me at 215-241-2334.

Sincerely,

Victor Caraballo, M.D.
Senior Medical Director, Quality Management

CERTIFIED MAIL ARTICLE #: 7012 1010 0002 8288 2590

CC014.20111013.3
15886

P.2

1901 Market Street
Philadelphia, PA 19103-1480

## Independence

CONFIDENTIAL

February 5, 2014

Via Certified Mail/Return Receipt

John Salvo, M.D.
Marc Zimmerman, M.D.
Philadelphia Orthopaedic Associates Inc.
2410-14 South Broad Street
Suite 200
Philadelphia, PA 19145

RE: Andrew J. Collier, Jr., M.D.

Dear Drs. Salvo & Zimmerman:

This letter is to inform you that Andrew J. Collier, Jr., M.D. is no longer permitted to professionally attend to members of Independence Blue Cross and its affiliates (collectively Independence), including but not limited to Keystone Health Plan East, Keystone 65, Personal Choice, and Personal Choice 65, CSI, and the City of Philadelphia Employee Disability Program members. Andrew J. Collier's, Jr., M.D. termination from the Independence network is effective November 26, 2013.

Until further notice, Andrew J. Collier, Jr., M.D. is not permitted to see any member of an Independence healthcare plan. In addition, the care of Andrew J. Collier's, Jr., M.D. existing patients, who are members of Independence, must be transferred immediately upon receipt of this notice to another credentialed physician in your practice.

Independence and its affiliates will assume no financial responsibility for services that are provided by Andrew J. Collier, Jr., M.D. as of November 26, 2013.

We appreciate your cooperation. Should you have any questions regarding this matter, please call me at 215-241-2334.

Sincerely,

Victor Caraballo, M.D.
Senior Medical Director, Quality Management

CERTIFIED MAIL ARTICLE #: 7012 1010 0002 3288 2606

Independence Blue Cross offers products directly, through its subsidiaries Keystone Health Plan East and QCC Insurance Company, and with Highmark Blue Shield, Independent Licensees of the Blue Cross and Blue Shield Association.